UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BEIJING CRS METALLURGICAL MACHINERY CO., LTD.**<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>**ORIENT COMMERCIAL JOINT STOCK BANK**,<br><br>　　　　　Respondent. | Civil Action No. 25-5617<br><br>**CONFIRMATION, RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARD** |

**PETITION FOR CONFIRMATION, RECOGNITION
AND ENFORCEMENT OF FOREIGN ARBITRAL AWARD**

This is a petition pursuant to 9 U.S.C. § 207 of the Federal Arbitration Act (the "**FAA**") and Article III of the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "**Convention**"), requesting that this Court:

(a)　confirm Award No. 061 of 2025 issued by the Singapore International Arbitration Centre ("**SIAC**") on April 24, 2025 (the "**Final Award**"), in the arbitration captioned: ARB 330 of 2022 - Beijing CRS Metallurgical Machinery Co., Ltd. And Orient Commercial Joint Stock Bank (the "**Arbitration**");

(b)     issue a judgment in Petitioner's favor against the Respondent as provided for in the Final Award;

(c)     award the Petitioner the costs of this confirmation proceeding; and

(d)     retain jurisdiction over this matter until the Respondent have fully complied with the Final Award.

A true and correct copy of the Final Award is attached as "**Exhibit A**" to the Declaration of Yang Liu, undersigned counsel for Petitioner, submitted herewith.

## PARTIES

1. Petitioner BEIJING CRS METALLURGICAL MACHINERY CO., LTD. ("**CRS**") is a company incorporated and existing under the laws of the People's Republic of China ("**PRC**"). Its address is 4th Floor, Building 11 (No. 478, Hujialou Centralized Office Area), Guandongdian, Chaoyang District, Beijing, PRC.

2. Respondent ORIENT COMMERCIAL JOINT STOCK BANK ("**OCB**") is a company incorporated and existing under the laws of the Socialist Republic of Vietnam ("**Vietnam**") with a business address at:

     a.   10-BT1 Residential Area Bac Linh Dam Urban Area, Hoang Mai, Hanoi, Vietnam, and

     b.   28 Cat Linh, Cat Linh Ward, Dong Da District, Hanoi, Vietnam, as well as at

     c.   No. 41 and No. 45 Le Duan, Ben Nghe Ward, District 1, Ho Chi Minh City, Vietnam.

**JURISDICTION AND VENUE**

3. CRS's right to confirm the Final Award arises under the Convention, Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq.*, codifies and applies the Convention to award-recognition actions brought before the courts of the United States.

4. The Court has original subject matter jurisdiction over this action under 9 U.S.C. § 203, which provides that "[t]*he district courts of the United States… shall have original jurisdiction over* [any] *action or proceeding falling under the Convention*." This proceeding falls under the Convention because it arises out of a commercial dispute involving certain parties that are not citizens of the United States. (see 9 U.S.C. § 202 ["*an arbitral award arising out of a legal relationship … which is considered as commercial … falls under the Convention*" unless the relationship is wholly between citizens of the United States"].) Moreover, the Final Award was made in Singapore, which is a signatory and party to the Convention.

5. 28 U.S.C. § 1331 also gives the Court subject-matter jurisdiction over this proceeding, because this proceeding is a "civil action arising under the … laws, or treaties of the United States."

6. Venue is proper in this Court under 9 U.S.C. § 204 and 28 U.S.C. § 1391(b)(1). Venue is proper under 9 U.S.C. § 204 as this is the "*court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought*." Venue is proper under Section 1391(b)(2) because this is a "*a*

*judicial district in which . . . a substantial part of property that is the subject of the action is situated.*"

## BACKGROUND

7.     CRS and OCB entered into a Crane Return Bank Guarantee agreement on July 1, 2021 (the "**Guarantee**"), and its amendment, effective November 19, 2021 (the "**Amendment**" and, with the Guarantee, the "**Agreements**"). The arbitration provision, found at the last paragraph of the Guarantee, provided that any dispute under the Guarantee should be resolved by SIAC arbitration.

8.     Attached as **Exhibit B** to the Declaration of Cong Li / **Exhibit C** to the Declaration of Yang Liu filed contemporaneously with this Petition, is a true and correct copy of the Agreements.

9.     By a Contract for Crane Rental Service dated June 27, 2021 ("**Lease Contract**"), CRS (as lessor) agreed to lease a crane (Model XGL 1800) ("**Crane**") to Ia Pet Dak Doa Wind Power Plant Number One Joint Stock Company ("**IP1**") (as lessee) for a windfarm project in Vietnam. The period of the lease was for 4 months consecutively for a total sum of USD 1,030,000 ("**Initial Rental Duration**"). A copy of the Lease Contract is attached as "**Exhibit A**" to the Declaration of Cong Li and as "**Exhibit B**" to the Declaration of Yang Liu.

10.     On July 1, 2021, under the instruction of the IP1, OCB issued the Guarantee to CRS, under which OCB "*irrevocably and unconditionally undertake*[s] *to pay*" to CRS

any amount, not exceeding in total an amount of USD 2,500,000, within 5 business days, upon receipt of the CRS' first written demand stating that the IP1 is in breach of its obligations stipulated in the Lease Contract.

11. The Guarantee clearly stipulates that *"[s]imple written notification from [CRS] shall be accepted by [OCB] as conclusive evidence that the amount claimed is owed and due to [CRS] and without recourse to [the Instructing Party]"*. The Guarantee came into effect from July 1, 2021 and was originally supposed to remain in full force till November 22, 2021 or when the total guaranteed sum is drawn in full, whichever is earlier. On November 19, 2021, the Guarantee was amended by the OCB to the extent that the Guarantee shall remain in full force till December 22, 2021 or when the total guaranteed sum is drawn in full, whichever is earlier.

12. The Parties' dispute arose from IP1's failure to extend the Guarantee and return the Crane on time in breach of the Lease Contract. CRS sent a written demand letter, through its service bank, notifying OCB of such breach and demanding payment of USD 2,500,000 under the Guarantee. OCB disputes CRS' claim under the Guarantee and claims that CRS' demand under the Guarantee was unconscionable. A copy of the demand letter dated 21 December 2021 is attached as "**Exhibit C**" to the Declaration of Cong Li and a copy of the second demand letter issued through Fangda Partners is attached as "**Exhibit D**" to the Declaration of Yang Liu.

13. On December 28, 2022, CRS commenced the Arbitration against OCB for the following reliefs:

"(1) a declaration that [OCB]'s failure to make payment in the full amount of USD 2,500,000 to CRS constitutes a breach of the Guarantee;
(2) an order that [OCB] pay to [CRS] the outstanding payment in the full amount of USD 2,500,000;
(3) an order Pursuant to Article 32.9 of the SIAC Rules 2016 that [OCB] pay [CRS] interest on the above sum accruing from the date when the cause of action arose; an order that [OCB] pay [CRS] interest on the above sum accruing from 27 December 2021 until the date of the final award, at the rate of 6% per annum, on a simple interest basis;
(4) an order that the entirety of [CRS]'s costs of the arbitration, including all fees and expenses of the arbitral tribunal, the SIAC, and the legal costs, be paid by [OCB];
(5) an order that [OCB] pay [CRS] interest on the above sum awarded amount, calculated from the date of the final award until the date of full payment, at the rate of 5.33% per annum, on a simple interest basis; and
(6) any such other relief, orders or declarations as the arbitral tribunal may deem appropriate."

14. OCB on the other hand sought the following relief against CRS:

"(1) a finding that [CRS]'s claims are unlawful;
(2) [OCB] opposes all requirements and claims of [CRS] set forth in the Statement of Claim;
(3) an order rejecting all of [CRS]'s requirement and claims; and
(4) an order that the entirety of [OCB]'s costs of the arbitration, including all fees and expenses of the arbitral tribunal, the SIAC, and the legal costs, be paid by [CRS]."

15. While the Agreements do not contain a provision as to the composition of the arbitral tribunal, CRS had proposed that the dispute be heard by a sole arbitrator to be appointed by the President of the SIAC pursuant to Rule 9 of the SIAC Rules.

16. On September 5, 2023, the President of the Court of Arbitration of SIAC appointed Mr Peter Chow as sole arbitrator in the Arbitration. The sole arbitrator-Tribunal was duly constituted. (Final Award, ¶¶7-8).

17. Between November 19 to November 20, 2024, the Tribunal conducted a oral hearing in Singapore in a hybrid format, with counsel and witnesses from each party attending both in person and remotely via video conference. (Final Award, ¶¶86-88).

18. On April 24, 2025, the Sole Arbitrator delivered the Final Award that finally determined all issues in dispute between the Parties in favor of CRS. (Final Award, ¶¶356-357).

19. The Final Award was exhaustive, spanning 94 pages. In the dispositive section of the Final Award, the Sole Arbitrator:

> "(1) declares that the Respondent (OCB)'s failure to make payment in the full amount of USD 2,500,000 to the Claimant (CRS) constitutes a breach of the Guarantee;
> (2) orders the Respondent (OCB) to pay to the Claimant (CRS) the outstanding payment in the full amount of USD 2,500,000;
> (3) orders the Respondent (OCB) to pay to the Claimant (CRS) pre-award interest on the above sum accruing from 28 December 2021 until the date of the final award at the rate of 5.33% per annum on a simple interest basis;
> (4) orders the Respondent (OCB) to pay to the Claimant (CRS) the costs of the arbitration (including all fees and expenses of the arbitral tribunal and the SIAC), and the costs of legal representation (including fees, expenses and disbursements incurred for the Claimant's legal representation), in the sum of RMB 2,813,462.88; SGD 148,417.93; HKD 7,000; and USD 5,620;
> (5) orders the Respondent (OCB) to pay to the Claimant (CRS) interest on all of the amounts awarded in paragraphs [(2)] – [(4)] above calculated from the date of this Final Award until the date of full payment at the rate of 5.33% per annuum on a simple interest basis; and
> (6) orders that the Respondent (OCB)'s claims for relief are denied."

(Final Award, ¶358).

20. These amounts are overdue and payable to CRS.

21. To date, OCB has failed to pay any amount pursuant to the Final Award. As of 8 July 2025, the outstanding amount includes the following:

- Principal amount of **USD 2,500,000**;

- Pre-award interest of **USD 442,828.08**

- Arbitration and Legal Costs of **RMB 2,813,462.88**, **SGD 148,417.93**, **HKD 7,000**, and **USD 5,620**;

- Post-award interest of **RMB 30,813.20, SGD 1,625.48, HKD 76.66** and **USD 32,291.56**.

**THE AWARD SHOULD BE CONFIRMED**

22. The Sole Arbitrator's Final Award is not only well-reasoned but also issued in a proceeding in which all parties bound by the Final Award had a full and ample opportunity to participate.

23. The Federal Arbitration Act ("**FAA**") provides that "[w]*ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration*." (9 U.S.C. § 207.). Given that the Final Award was rendered on April 25, 2025, this Petition to recognize and enforce the Final Award is timely under the FAA.

24. Confirmation of the Award is governed by the Convention, as implemented by Chapter 2 of the FAA, 9 U.S.C. § 201, *et seq*. The Final Award is an "*arbitral award arising out of a legal relationship… which is considered as commercial*," and therefore it falls within the purview of the Convention. (See 9 U.S.C. § 202.)

25. Article III of the Convention directs that each signatory nation, which includes China, Vietnam and the United States, "*shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon*."

26. According to the Convention and the FAA, a district court's role in reviewing an arbitral award is strictly limited: "[t]*he court shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." (9 U.S.C. § 207 [emphasis added].) Indeed, the South District of New York routinely confirms foreign arbitral awards pursuant to the FAA and the Convention. In *Exclusive Trim, Inc. v. Kastamonu Romania, S.A.,* this court explained:

> "The Second Circuit has held that confirmation under the New York Convention is a 'summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."
>
> (*Exclusive Trim, Inc. v. Kastamonu Romania, S.A.*, No. 23-cv-03410 (ALC), 2023 WL 6729652, at *7 (S.D.N.Y. Oct. 12, 2023) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)).

27. This court further emphasized the "*pro-enforcement bias*" of the Convention, obligating courts to enforce foreign arbitral awards "*subject only to limited exceptions.*" *Id*.

28. The party opposing confirmation of an arbitral award under the Convention bears the burden of proving that such a ground for refusal exists and applies:

> "The "party opposing enforcement of an arbitral award has the burden to prove that one of the seven defences" applies and this burden is a "heavy one, as the showing required to avoid summary confirmation is high."
>
> (*Encyclopaedia Universalis S.A. v. Encyclopaedia Britanica*, Inc., 403 F.3d 85, 90 (2d Circ. 2005))

29. OCB cannot satisfy that high burden in this case.

30. The grounds on which a court can refuse or defer confirmation are:

- The lack of a valid arbitration agreement between the parties;
- That the award resolves a dispute outside the scope of the parties' arbitration agreement;
- That the award resolves a dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;
- That the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;
- That the award was composed and/or the arbitration used procedures inconsistent with the parties' arbitration agreement;

- That the award is not yet binding or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or

- That confirming the award would contravene the public policy of the country where confirmation is sought.

*See* Convention art. V.

31. As further particularized in the accompanying Memorandum of Law, none of these grounds are engaged here. OCB agreed that disputes under the Guarantee should be resolved by arbitration. Nothing in the laws of the United States prohibit resolving this type of dispute through arbitration; to the contrary, the United States has long favored arbitration for the resolution of international commercial disputes. *See Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.,* 354 F. Supp. 2d 499, 503 (S.D.N.Y. 2005) (noting Supreme Court's endorsement of "*an emphatic federal policy in favour of arbitral dispute resolution,*" which "*applies with special force in the field of international commerce*") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). OCB had notice of the Arbitration and actively participated in each of its phases. The Tribunal was composed in accordance with the Guarantee. Pursuant to rule 32.11 of the SIAC Rules 2016, the Final Award is "*final and binding*" on OCB, and OCB must comply with it "*without delay.*" To date, it has failed to do so despite the fact that the Final Award has not been set aside at the seat of arbitration (i.e., the Singapore). Lastly, confirming the Final Award would offend no public policy of the United States.

32. Therefore, the Convention requires confirmation of the Final Award.

## RELIEF REQUESTED

WHEREFORE, Petitioner CRS respectfully requests that this Court:

(a) enter a judgment in its favor against OCB confirming, recognizing and enforcing the Award;

(b) grant CRS judgment against OCB in the amount of the Award together with pre-Award simple interest as required by the Award as well as post-Award interest as also required by the Award; and

(c) grant CRS such other relief as this Court deems just and proper.

Dated: July 8, 2025

Respectfully submitted,

Dan Tan (NY Bar. No. 4306346)
**Dan Tan Law**
305 Broadway
Suite 750
New York, NY 10007
USA
Telephone: +1 (646)777-8840
Email: dan@dantanlaw.com

Mark Beckett (NY Bar. No. 4306346)
Beckett Law
45 Rockefeller Plaza
New York, NY 10011
Telephone: +1 (212) 332-3239
Email: mark.beckett@gmail.com