UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BEIJING CRS METALLURGICAL MACHINERY CO.,
LTD,

         Petitioner,

    -v-

ORIENT COMMERCIAL JOINT STOCK BANK,

         Respondent.

-------------------------------------------------------------------

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/07/2026
```

25-cv-5617 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioner Beijing CRS Metallurgical Machinery Co., Ltd. ("CRS," or "Petitioner")

petitions, pursuant to 9 U.S.C. § 207 of the Federal Arbitration Act ("FAA") and Article III of

the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the

"New York Convention"), to confirm an arbitral award (the "Award") issued by the Singapore

International Arbitration Centre ("SIAC") on April 24, 2025.  Dkt. No. 1 (the "Petition," or

"Pet.").  Respondent Orient Commercial Joint Stock Bank ("OCB," or "Respondent") opposes

the Petition and moves to dismiss it for lack of personal jurisdiction, absence of venue, and under

the doctrine of *forum non conveniens*.  Dkt. No. 21.

For the following reasons, the petition is granted.

## BACKGROUND

Petitioner is a company incorporated and existing under the laws of the People's

Republic of China with its office in Beijing, PRC.  Pet. ¶ 1.  Respondent is a company

incorporated and existing under the laws of the Socialist Republic of Vietnam and has business

addresses in Hanoi and Ho Chi Minh City, Vietnam.  Pet. ¶ 2.  Respondent operates over 176

branches and transaction offices across Vietnam.  Dkt. No. 21-1 ¶ 3 (the "Thuy Decl.").  It has

no offices outside Vietnam.  *Id.*

Petitioner is party to a lease contract with Ia Pet Dak Doa Wind Power Plant Number One Joint Stock Company ("IP1") dated June 27, 2021 (the "Lease Agreement"), Dkt. No. 1-8, and a Crane Return Bank Guarantee agreement (the "Guarantee") dated July 1, 2021, as amended effective November 19, 2021.  Pet. ¶ 7; Dkt. No. 1-6 ¶ 2.

The Lease Agreement provided for the lease by IP1 of a Tower Crane for a windfarm project in Vietnam.  The period of the lease was four months beginning July 1, 2021.  Dkt. No. 1-8 ¶ 2.1.  The lease price was USD 1,030,000.  *Id.* ¶ 7.1.  Article 7.5 of the Lease Agreement required IP1 to obtain from Respondent "(at his cost) and deliver to [Petitioner] a Crane Return Bank Guarantee for proper performance, in the amount of USD 2,500,000 (Say US Dollars two point five million only), within seven (7) days after both Parties have signed the Contract."  *Id.* ¶ 7.5.  The Agreement clarifies that the Lessor will not "make a claim under the Crane Return Bank Guarantee except for amounts to which the Lessor is entitled under the contract in the event of" a failure by the Lessee to extend the agreement as required, or to achieve the "ending date" within four months of the start date.  *Id.*

The Guarantee contains Respondent's irrevocable and unconditional undertaking to pay Petitioner "any amount, not to exceed in total an amount of USD 2,500,000" upon the receipt of a demand stating that IP1 is in breach of its obligations under the Lease Agreement.  Dkt. No. 1-9.  The Guarantee also contains an arbitration agreement.  It provides:

> THIS CRANE RETURN BANK GUARANTEE SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH LAWS OF SINGAPORE AND IS SUBJECT TO THE UNIFORM RULES FOR DEMAND GUARANTEES (URDG), 2010 VERSION, ISS PUBLICATION NO. 758.  ANY DISPUTE UNDER THIS CRANE RETURN BANK GUARANTEE SHOULD BE SUBMITTED TO AND RESOLVED BY ARBITRATION ADMINISTERED BY THE SINGAPORE INTERNATIONAL ARBITRATION CENTER (SIAC).  THE

> PLACE OF ARBITRATION WILL BE IN SINGAPORE AND THE ARBITRATION LANGUAGE IS ENGLISH.

Dkt. No. 1-3 at 4.[1]

In late October 2021, as the four-month lease neared its expiry date, IP1 began transporting the crane to the China-Vietnam border so that it could be returned to CRS. Dkt. No. 1-7 (the "Award") ¶¶ 98–99. CRS determined that the crane required USD 397,800 in repairs and rental fees for the duration of the repair, pursuant to Article 4.7 and Article 8 of the Lease Agreement, which required that the Crane be returned in the condition it was lent. *Id.* ¶ 100. IP1 informed CRS that it would not pay that value because it had obtained a proposal for the repairs at a lower cost. *Id.* ¶ 101. CRS responded that IP1 could proceed with that lower cost repair but would need to pay a rental fee for any repair period and extend the Guarantee accordingly. *Id.* ¶ 102. IP1 decided to pay the USD 397,800 instead. *Id.* ¶ 108. However, by November 12, 2021, IP1 had not yet made that payment, and so CRS made a demand under the payment guarantee and requested that IP1 extend the Guarantee due to delays in the return of the crane at the border. *Id.* ¶ 109. The Guarantee was extended to December 22, 2021, but trouble with customs at the China-Vietnam border continued and the crane was not returned by that date. *Id.* ¶¶ 113–19.

On December 21, 2021, after IPI failed to extend the Guarantee and was about to fail to return the Crane on time in breach of the Lease Agreement, Petitioner sent a written demand letter notifying Respondent of the breach and demanding payment of USD 2,500,000 under the Guarantee. Pet. ¶ 12; Dkt. No. 1-1 ¶ 3; Dkt. No. 1-4; Dkt. No. 1-6 ¶ 3.[2] Respondent disputed Petitioner's claim under the Guarantee and claimed that the demand was unconscionable.

---

[1] Unless otherwise indicated, all page numbers refer to ECF pagination.

[2] A second demand letter was sent by Petitioner through counsel Fangda Partners dated May 7, 2022. Dkt. No. 1-1 ¶ 3; Dkt. No. 1-6 ¶ 3; Dkt. No. 1-10.

Pet. ¶ 12.

On December 28, 2022,[3] Petitioner commenced an arbitration (the "Arbitration") against Respondent demanding that Respondent pay the outstanding payment in the full amount of USD 2,500,000 plus interest, and the costs of the arbitration. *Id.* ¶ 13. Respondent argued that Petitioner's claims were unlawful and sought an order to that effect plus the costs of the arbitration. *Id.* ¶ 14. The SIAC appointed an arbitrator and an arbitral tribunal was constituted. *Id.* ¶ 16. The Arbitrator conducted an oral hearing in Singapore from November 19, 2024, to November 20, 2024. *Id*. ¶ 17; Dkt. No. 1-6 ¶ 4.

The Arbitrator delivered the Award on April 24, 2025. *Id.* ¶ 18; Dkt. No. 1-11. He declared that Respondent's failure to make full payment in the amount of USD 2,500,000 constituted a breach for the Guarantee, and ordered Respondent to pay Petitioner USD 2,500,000 plus pre-Award interest from December 28, 2021 until the date of the Award at the rate of 5.33% per annum, the costs of the arbitration, and the costs of legal representation in the sum of RMB 2,813,462.88, SGD 148,417.93, HKD 7,000 and USD 5,620. Award ¶ 358. The arbitrator also ordered Respondent to pay interest at the rate of 5.33% on the amount of the award from the date of the Award until the date of full payment. Pet. ¶ 19; Dkt. No. 1-6 ¶ 6; Dkt. No. 1-7 ¶.

Respondent has not paid the sums due under the Award. Pet. ¶¶ 20–21.

## PROCEDURAL HISTORY

Petitioner filed this Petition on July 8, 2025. Dkt. No. 1. On September 8, 2025, Respondent acting *pro se* filed an "Objection" to confirmation of the Award. Dkt. No. 6. Petitioner submitted a response to that objectionon the docket seven days later, on September 15, 2025. Dkt. No. 7.

---

[3] The Award states that the arbitration as commenced on December 26, 2022. Dkt. No. 1-7 ¶ 20. The difference is immaterial.

On September 16, 2025, the Court issued an order noting that Respondent's response had not been filed by counsel admitted to the bar of the Court and extended Respondent's time to respond to the Petition to October 6, 2025.  Dkt. No. 9.  On October 6, 2025, counsel for Respondent appeared in this case, Dkt. No. 13, and requested an extension to October 20, 2025 to respond to the Petition, Dkt. No. 14.  The Court granted that request.  Dkt. No. 16.  Petitioner then objected to Respondent responding to the Petition, arguing that the "Objection" filed on September 15, 2025, should be treated as Respondent's legally operative response.  Dkt. No. 17.  The Court rejected that argument and confirmed the extension by order of October 7, 2025, noting that Respondent's prior filing—which was not made by a lawyer admitted to the bar of the Court—was a legal nullity, and that Petitioner had shown no prejudice from the extension.  Dkt. No. 19.  The Court gave Petitioner until October 27, 2025, to reply to Respondent's response to the Petition.  *Id.*

On October 20, 2025, Respondent filed a response styled as a motion to dismiss the Petition for lack of jurisdiction, improper venue, and inconvenient forum, supported by a memorandum of law in support and the declaration of Tran This Bich Thuy.  Dkt. Nos. 20-21.[4] Petitioner filed a reply memorandum of law on October 27, 2025.  Dkt. No. 22.[5]

## DISCUSSION

Respondent asserts that the Court does not have personal jurisdiction over it and that venue does not properly lie in this District.  Dkt. No. 21 at. 1.  In the alternative, Respondent

---

[4] "A motion to dismiss is not a procedurally proper response to a petition to confirm, modify, or vacate an arbitration award."  *Berkowitz v. Gould Paper Corp.*, 2022 WL 118232, at *1 n.1 (S.D.N.Y. Jan. 12, 2022).  The Court treats the motion as OCB's response to the Petition.
[5] On October 30, 2025, Respondent requested that the Court permit it to file a reply in further support of its motion to dismiss to lack of jurisdiction and improper venue by November 10, 2025.  Dkt. No. 23.  Petitioner objected.  Dkt. No. 24.  By order of October 31, 2025, the Court denied Respondent's motion to reply.  Dkt. No. 25.

argues that the Court should dismiss this action under the doctrine of forum non conveniens. *Id.* at 6–9.

## I.    Personal Jurisdiction

The courts of the United States have subject matter jurisdiction under the FAA and the New York Convention to confirm and enforce arbitration awards rendered outside the United States between parties located outside the United States. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 73 (2d Cir. 2017). "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

"Because the New York Convention confers only subject-matter jurisdiction, to enforce a foreign arbitral award 'the enforcing court must have in personam or quasi in rem jurisdiction over the party ordered to pay.'" *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co. Ltd,* 2021 WL 168930, at *3 (S.D.N.Y. Jan. 18, 2021) (quoting *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012)); *Glencore Grain Rotterdam B. V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1128 (9th Cir. 2002); *Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 622 F. Supp. 25, 27 (S.D.N.Y. 1985) (Leval, J.) (holding that before the court exercises personal jurisdiction under the New York Convention, "[s]ome basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power"); *see also* Restatement (Third) of Foreign Relations Law § 487 cmt. c (1987) ("an action to enforce a foreign arbitral award requires jurisdiction over the award debtor or his

property"). If the respondent to a petition to confirm an arbitral award "raises a personal jurisdictional defense, the 'plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.'" *Simplot India LLC v. Himalaya Food Int'l Ltd.*, 2024 WL 1136791, at *4 (D.N.J. Mar. 15, 2024) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citations omitted)). The petitioner may not rely alone on an unverified complaint or bare allegations made "upon information and belief." *Id.* (internal citations and quotations omitted).

Respondent argues that the Court lacks personal jurisdiction to confirm the Award. Dkt. No. 21 at 3–5. In support of its argument, Respondent offers evidence that it has offices only in Vietnam, Thuy Decl. ¶ 3, that it does not conduct business in the United States, *id.* ¶ 5, and that it has never sued or been sued in the United States, *id.* ¶ 6. Its only connections to the United States are two nostro accounts it holds through Deutsche Bank Trust Company and J.P. Morgan respectively for facilitating the exchange of foreign currency. *Id.* ¶ 6. All of its officers and personnel related to the Guarantee are located in Vietnam and none are residents of the United States. *Id.* ¶ 9. Respondent also offers that the Lease Agreement and Guarantee were for a crane rental in Vietnam, that Petitioner entered into the agreements in China and the crane rental took place in both China and Vietnam, that the underlying dispute was arbitrated in Singapore, that the crane is currently located in a store facility on the Vietnamese side of the Vietnamese-Chinese border, and that none of the activities giving rise to the present action took place in New York. *Id.* ¶ 8. It notes that the Lease Agreement contemplated activities taking place in Vietnam and China and that there are no contract terms referencing New York. Dkt. No. 21 at 4. Respondent's argument is without merit.

A number of courts have held that either "personal or quasi in rem jurisdiction is required to confirm foreign arbitral awards pursuant to the New York Convention." *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 396 (2d Cir. 2009). "Quasi in rem jurisdiction is jurisdiction over designated property that results in a judgment affecting the interests of particular individuals in designated property." *CME Media Enters. B.V. v. Zelezny*, 2001 WL 1035138, at *3 (S.D.N.Y. Sept. 10, 2001) (Chin, J.). It permits a court "to secure a pre-existing claim in the designated property or to apply property of a defendant towards satisfaction of a judgment previously obtained against the defendant." *Id.* "[T]he effect of a judgment in a quasi in rem case is limited to the property that supports jurisdiction." *Id.*

The federal courts thus uniformly have held that where the respondent has property in a particular state, a court in that state can exercise quasi in rem jurisdiction to confirm a foreign arbitral award against that property. *See Frontera Resources Azer.*, 582 F.3d at 396; *Crescendo Mar. Co. v. Bank of Commc'ns Co.*, 2016 WL 750351, at *5 (S.D.N.Y. Feb. 22, 2016); *Equipav S.A. Pavimentacao, Engenharia e Comercio Ltda. v. Bertin*, 2024 WL 196670, at *7 (S.D.N.Y. Jan. 18, 2024) (finding quasi in rem jurisdiction over an in-district bank account belonging to respondent); *La Dolce Vita Fine Dining Co. v. Zhang*, 2023 WL 1927827, at *3–4 (S.D.N.Y. Feb. 10, 2023), *vacated by consent*, 2023 WL 5686197 (2d Cir. Aug. 30, 2023) (finding quasi in rem jurisdiction over in-district apartment based on "email exchanges and other documents that unambiguously demonstrate [respondent's] interest in the apartment"); *CME Media Enters.*, 2001 WL 1035138, at *4; *Shaffer v. Heitner*, 433 U.S. 186, 210 n.36 (1977) ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State

8

where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.").

Such quasi in rem jurisdiction is subject to the limit that a party seeking to establish jurisdiction must actually identify property or assets of the respondent in the forum.  "[T]he *sine qua non* of basing jurisdiction on a defendant's assets in the forum is the identification of some asset."  *Glencore Grain*, 284 F.3d at 1127.  Nor is the mere "possibility that Respondent may have interest in a third party's assets held in an in-jurisdiction bank" a "sufficient basis to exert quasi in rem jurisdiction over the third party's bank account."  *Simplot India LLC*, 2024 WL 1136791, at *12; *see also Cargnani v. Pewag Austria G.m.b.H.*, 2007 WL 415992, at *11 (E.D. Cal. Feb. 5, 2007) (finding no quasi in rem jurisdiction because the only identified assets "belong[ed] to [the respondent's] subsidiary, not to respondents, and petitioner does not cite any other specific asset which could be attached").

The Court has quasi in rem jurisdiction over Respondent.  It is undisputed that Respondent maintains two nostro accounts in the United States, which OCB itself admits it holds for "facilitating the exchange of foreign currency."  Thuy Decl. ¶ 5; *see* Dkt. No. 8-1 (OCB's "standard settlement instructions" identifying their overseas accounts, including the two relevant accounts in New York).  OCB has confirmed the existence of the accounts and identified them at Deutsche Bank Trust Company and J.P. Morgan by their account number.  Thuy Decl. ¶ 5.  The fact that it is "common practice in the banking industry for smaller, purely domestic banks to rely on larger correspondent banks with nostro accounts to meet their domestic clients' international needs" does not alter the fact that the bank maintains those assets in the United States.  *Id.*  That is sufficient for this Court to find quasi in rem jurisdiction (although, as

explained, "any judgment will have no effect beyond the property that forms the basis" of that jurisdiction). *CME Media*, 2001 WL 1035138, at *4.

Respondent argues that even if OCB maintains bank accounts in the United States, CRS is required to establish some relationship between those accounts and the underlying transaction based upon which the Award was issued. *See* Dkt. No. 21 at 5. To support that proposition, they cite to cases in which courts have addressed the circumstances in which the existence of a nostro account give rise to personal jurisdiction over a bank for liability outside the arbitration context. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013); *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022). But those cases are inapposite— "minimal contacts are not required for a court to exercise jurisdiction over assets to permit a party to collect on an arbitration award." *CME Media Enters.*, 2001 WL 1035138, at *4. The maintenance of those accounts is sufficient to permit the Court to confirm the Award and enforce it to the extent of those assets. *See id.*; *Equipav S.A.*, 2024 WL 196670, at *12.

## II.    Venue

Respondent next argues that venue is improper in this District. Dkt. No. 21 at 5-6. That argument is without merit. Section 204 of the New York Convention provides that:

> An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

9 U.S.C. § 204. The Supreme Court has clarified that the venue provisions in the FAA "together provide for liberal choice of venue for actions to confirm awards." *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 202–03 (2000). And generally, where no defendant resides in any district, and where there is no district in which events giving rise to the claim

occurred, venue lies in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).

Some courts in this District have held that "in the absence of an agreement to the contrary, venue is proper in any court that has subject matter jurisdiction."  *Linsen Int'l Ltd. v. Humpuss Sea Transp. PTE LTD*, 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011); *see also Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 2016 WL 5793399, at *4 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 741 F. App'x 832 (2d Cir. 2018) (summary order) (citing cases).  Other courts have criticized that approach for not giving meaning to the New York Convention's requirement that the court be one in which a "proceeding with respect to the controversy between the parties could be brought," but have held that such requirement is satisfied by "a proceeding to attach property as pre-judgment security."  *See La Dolce Vita Fine Dining Co.*, 2023 WL 1927827, at *5.

The parties here do not dispute that OCB maintains two nostro bank accounts in New York.  Therefore, even "[i]n the absence of an arbitration agreement," the parties "could have brought a proceeding to attach the" assets in New York "as security for enforcement" of a judgment rendered in another forum, pursuant to New York Law.  *Id.*  Assuming the narrower construction that venue is not coterminous with subject matter jurisdiction, venue lies in New York here because the district is one in which a "proceeding with respect to the controversy between the parties could be brought."  9 U.S.C. § 204.

## III.    Forum Non Conveniens

Finally, Respondent argues that if the Court finds that it has personal jurisdiction and venue has been properly laid in this District, it should nonetheless refuse jurisdiction under the doctrine of *forum non conveniens*.  Dkt. No. 21 at 6–9.

The doctrine of *forum non conveniens* applies to actions to confirm a foreign arbitral

11

award.  *See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 389 (2d Cir. 2011); *Williams v. Fed. Gov't of Nigeria*, 2024 WL 3759649, at *20 (S.D.N.Y. Aug. 12, 2024), *aff'd*, 2025 WL 1065928 (2d Cir. Apr. 9, 2025).  "A United States court has residual and inherent power to dismiss a lawsuit when a more convenient forum might be available.  [The New York Convention does not] trump that authority and prevent a court from exercising its authority to dismiss an action to confirm an arbitral award in the United States when another forum was more convenient."  *Williams*, 2024 WL 3759649, at *20.  The Second Circuit has established a three-step process to determine whether dismissal on the ground of *forum non conveniens* is appropriate:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

At step one, because Petitioner is a foreign party, its choice of forum is entitled to lesser deference, but that does not mean its choice of forum is entitled to no deference.  *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001); *see Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (noting that "even a foreign plaintiff's decision to sue in a U.S. forum is entitled to some weight").  The "greater the plaintiff's or the lawsuit's bona fide connection to the United States . . . the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."  *Iragorri*, 274 F.3d at 72.  Petitioner has good reason for choosing this forum.  It "appears to be motivated by genuine considerations of convenience as it contends that Defendant owns assets in the United States—providing [Petitioner] an opportunity to attach and execute against them in the event this Court confirms the arbitration award."  *Sistem Muhendislik*, 2016 WL 5793399, at *5.  Its "choice of forum merits deference in these

12

circumstances." *La Dolce Vita Fine Dining Co*., 2023 WL 1927827, at \*5.  That a foreign

petitioner's decision to bring a petition in the United States is entitled to some deference is

consistent too with the New York Convention, which was designed to was to "encourage the

recognition and enforcement of commercial arbitration agreements."  *Scherk,* 417 U.S. at 520 n.

15.  Taken to its logical conclusion, Respondent's argument would never permit recognition in a

secondary jurisdiction, thereby defeating the purpose of the Convention and its adoption.

Next, at step two, an alternative forum is adequate if "(1) the defendants are subject to

service of process there; and (2) the forum permits 'litigation of the subject matter of the

dispute.'"  *Capital Currency Exchange, N.V. v. Nat. Westminster Bank PLC*, 155 F.3d 603, 609

(2d Cir. 1998).  "Where adequacy of an alternative forum is assessed in the context of a suit to

obtain a judgement and ultimately execution on a defendant's assets, the adequacy of the

alternate forum depends on whether there are some assets of the defendant in the alternate forum,

not whether the precise asset located here can be executed upon there."  *Figueiredo Ferraz*, 665

F.3d at 391.  Respondent suggests that either Singapore or Vietnam would be an adequate

alternative forum.  Dkt. No. 21 at 7–8.  However, it has provided no evidence whatsoever that

there are "some assets" of OCB in Singapore or Vietnam that can be executed against.  It appears

likely that, as a Vietnamese bank, OCB would possess such assets in Vietnam.  However, CRS

has not identified as much, as is its burden.

Finally, at step three the Court weighs the private and public interests implicated.  The

balance of the private and public factors here does not favor dismissal for *forum non conveniens*.

"[T]his is a summary proceeding to confirm an arbitration award [and] all that remains is the

narrow issue of confirmation."  *Sistem Muhendislik*, 2016 WL 5793399, at \*5.  Unlike actions

that may proceed to trial or require extensive access to witnesses or discovery, this dispute was

13

decided in arbitration and all that remains is the relatively narrow issue of confirmation. *Crescendo*, 2016 WL 750351, at \*7.  Although OCB asserts that the persons implicated are located abroad and would need to travel to New York, it does not explain the context in which said persons might be called, as it does not raise any non-jurisdictional grounds for vacating the award.  "Indeed, it would be rare for such evidence to be used in an action to confirm an arbitration award, which generally is a summary proceeding."  *La Dolce Vita Fine Dining Co.*, 2023 WL 1927827, at \*6.  Thus, the private factors do not weigh in favor of dismissal.

The public interest factors also weigh in favor of maintaining jurisdiction.  Although China or Vietnam may have a stronger connection to the underlying dispute between the parties, "the Second Circuit has recognized that confirmation of international arbitration awards falling under the New York Convention is a 'favored policy' of the United States—a public interest that weighs here heavily in favor of accepting jurisdiction."  *Id.* (citing *Figueiredo Ferraz*, 665 F.3d at 389–90).

Collectively, the three factors weigh against dismissal under the doctrine of *forum non conveniens*.  "It is the first principle of *forum non conveniens* analysis that unless the balance of factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Deston Songs LLC v. Wingspan Records*, 2001 WL 799811, at \*4 (S.D.N.Y. July 16, 2001) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The design of the New York Convention is to open the courts of all the signatory nations to actions to confirm an arbitral award rendered in any of them.  Even if Vietnam were an adequate alternative forum to execute against some of OCB's assets, Petitioner's choice of forum is entitled to weight and the private and public interest factors both weigh against dismissal.  *See Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 2016 WL 4735367, at \*13 (S.D.N.Y. Sept. 9, 2016) (noting that

"even if there were" an adequate alternative forum, "the balance of the public and private factors tilts strongly" against dismissal).  In short, under the plan of the New York Convention, the Court thus declines to dismiss the case under *forum non conveniens*.

## CONCLUSION

Aside from its arguments that the petition be dismissed based on jurisdiction, venue, or *forum non conveniens*, OCB does not argue any other grounds upon which this Court should decline to recognize and enforce the award.  "The grounds upon which a court in a secondary jurisdiction may decline to recognize and enforce an award are 'limited.'"  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007).  Under Article V(1) of the New York Convention, they are:

> a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . . ; or
>
> b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . . ; or
>
> c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or
>
> d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
>
> e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention Art. V(1).  Enforcement may also be refused if "[t]he subject matter of the difference is not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought.  *Id.* art. V(2).

OCB does not move to vacate the award on any of those grounds.  Jurisdiction and venue

15

are appropriate in this Court.  Accordingly, the petition to confirm the arbitration award is

GRANTED.

The Clerk of Court is respectfully directed to enter judgment confirming the Award and

close the case.


SO ORDERED.

Dated: January 7, 2026
      New York, New York

                                   LEWIS J. LIMAN
                           United States District Judge

16